# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ERIC JAMES PAVLIC, )<br>)<br>Plaintiff, )<br>v. )       1:19CV146<br>)<br>ANDREW SAUL, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | |

## **RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Eric James Pavlic brought this action to obtain review of a final decision of the Commissioner of Social Security[1] denying his claims for social security disability benefits and supplemental security income. The Court has before it the certified administrative record and cross-motions for judgment.

### I. PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits and supplemental security income in February 2015, alleging a disability onset date of November 2, 2013.[2] (Tr. 186-91, 192-95.)[3] The applications were denied initially and upon reconsideration. (*Id.* at 101-12, 113-

---

[1] Andrew Saul was confirmed as the Commissioner of Social Security on June 4, 2019, and was sworn in on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Nancy A. Berryhill as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Docket Entry 8.)

[3] Plaintiff amended his alleged onset date at the ALJ hearing to May 16, 2015. (Tr. 10.)

18, 119-24.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 142-43, 32-40.) After a hearing, the ALJ determined that Plaintiff was not disabled under the Act. (*Id.* at 12-23.) The Appeals Council denied a request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1-6.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court, therefore, is not whether Plaintiff is disabled but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520 and 416.920. *See Albright v. Comm'r of Soc. Sec.*

---

Because the ALJ found Plaintiff was not disabled, the request to amend the alleged onset date was moot. (*Id.*)

2

*Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4] The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 2, 2013. (Tr. 14.) He next found the following severe impairment at step two: lumbago. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.* at 16.) He next set forth Plaintiff's Residual Functional Capacity ("RFC") and determined that he could perform a full range of medium work. (*Id.* at 16-21.) At the fourth step, the ALJ determined that Plaintiff could perform his past relevant work as doffer. (*Id.* at 21-22.) In the alternative, the ALJ determined that there were jobs in the national economy that Plaintiff could also perform. (*Id.* at 22.) Consequently, he concluded that Plaintiff was not disabled. (*Id.* at 22-23.)

### IV. ISSUES AND ANALYSIS

Plaintiff raises three issues on appeal. First, Plaintiff contends that the ALJ's mental RFC determination is not supported by substantial evidence because he failed to properly weigh the opinion evidence and mischaracterized the record to conclude that Plaintiff had no severe mental impairments. (Docket Entry 11 at 4-11.) Second, Plaintiff contends that the ALJ's physical RFC determination is not supported by substantial evidence where he failed to properly weigh the opinion of Plaintiff's treating physician, Dr. Josiah M. Carr II, and failed

---

[4] "The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to his [or her] past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.*

to adequately develop the record regarding the extent of Plaintiff's lumbar impairment. (*Id.* at 11-15.) Finally, Plaintiff argues that his case was adjudicated by an improper and unconstitutionally appointed ALJ and should be remanded for a new hearing with a different and constitutionally appointed ALJ. (*Id.* at 15-19.) For the following reasons, these arguments lack merit.

### 1. **Plaintiff's Mental RFC is supported by substantial evidence.**

Plaintiff argues that the ALJ erred in the determination of Plaintiff's mental RFC. (*Id.* at 4-11.) At step two, the ALJ found that Plaintiff has the following degrees of limitation: mild limitations in understanding, remembering, and applying information; mild limitations in interacting with others; mild limitations in concentrating, persisting, and maintaining pace; and mild limitations in adapting and managing oneself. (Tr. 15.) Relevant to the ALJ's findings, the ALJ placed no mental restrictions in Plaintiff's RFC. Plaintiff argues that this conclusion was in error because the ALJ improperly weighed opinion evidence.

RFC measures the most a claimant can do in a work setting despite the physical and mental limitations of his impairment and any related symptom (*e.g.,* pain). *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also Dunn v. Colvin*, 607 F. App'x 264, 272 (4th Cir. 2015) (unpublished) (claimant's RFC is "[a] medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s).") (internal citation omitted); *Hines v. Barnhart,* 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy,

4

or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

"Social Security Ruling 96-8p explains that the RFC 'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (internal quotations omitted). An ALJ need not discuss every piece of evidence in making an RFC determination. *See Reid v. Commissioner of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)). However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000). As to the role of the function-by-function analysis, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96–8p, 1996 WL 374184, at *1.

Here, the ALJ carefully considered the relevant evidence in his determination of Plaintiff's mental RFC. As stated above, the ALJ found no more than mild limitations in the four broad areas of mental functioning at step two. (Tr. 15-16.) The ALJ cited observations from Plaintiff's consultative psychological examination with Dr. Julia Brannon where Plaintiff's thoughts were goal directed and appropriate to the questions asked. (*Id.* at 15, 340.) He was polite, cooperative and spoke with a spontaneous coherent voice. (*Id.*) Plaintiff

5

appeared easily distracted, had difficulty with serial 7s, and was able to recall five objects after a second attempt. (*Id.*) His cognitive function was in the low average to average range. (*Id.*) Dr. Brannon concluded that Plaintiff was able to understand and follow simple instructions but did have more difficulty with working memory and attention to more complex instructions. (*Id.* at 340.) The ALJ ultimately gave this opinion little weight because it appeared to rely heavily on Plaintiff's subjective complaints, it was a one-time examination, and it was inconsistent with the longitudinal record. (*Id.* at 21.)

At the hearing, Plaintiff testified that he takes Adderall for his Attention Deficit Hyperactivity Disorder ("ADHD"). (*Id.* at 17, 37.) The medication helped and Plaintiff did not think he had difficulty concentrating although his friends and family would say that he does things without thinking. (*Id.* at 17, 38.) In February 2014, Plaintiff reported to his primary physician, Dr. Carr, that he was not taking his Adderall because he could not afford the medication. (*Id.* at 17, 308.) Plaintiff had lost his job and insurance, though he found that he could do without the Adderall. (*Id.* at 308.) During that visit, Plaintiff was grossly oriented to person, place and time, communication ability was within normal limits, voice quality was normal, his attention and concentration abilities were normal, and he had normal mood and affect. (*Id.* at 17-18, 309.) When he returned to Dr. Carr in November 2014, Plaintiff was taking his Adderall medication daily with no significant side effects. (*Id.* at 18, 311.) His mental status examination at that time again revealed normal orientation, normal communication and attention abilities, and normal mood and affect. (*Id.* at 18, 312-13.)

During another visit with May 12, 2015, Plaintiff again demonstrated a normal mental

status examination. (*Id.* at 18, 320.) Dr. Carr noted that Plaintiff's medication use was stable. (*Id.* at 318.) Plaintiff's subsequent visits with Dr. Carr between December 2015 and June 28, 2017 demonstrated unchanged conditions with regards to Plaintiff's mental status. (*Id.* at 344, 346, 348, 350, 352, 354, 356, 358, 360, 362, 364, 366.)

The ALJ also considered the opinions of states agency psychological consultants Drs. Sharon J. Skoll and Mark Becker. (*Id.* at 20, 41-44, 50-53, 72-74, 89-91.) Dr. Skoll found that Plaintiff's mental impairments were non-severe. (*Id.* at 44, 53.) The ALJ gave this opinion great weight because it was consistent with the medical examination findings by Dr. Carr, and consistent with Plaintiff's daily activities and social functioning. (*Id.* at 20.) These activities include watching television, writing, occasionally riding with his roommate to make deliveries, caring for animals, doing some household chores, grocery shopping, paying bills, attending church, and talking with family. (*Id.* at 237-41.) The other state agency consultant, Dr. Becker, found that Plaintiff was able to remember and perform simple, repetitive tasks with moderate disruption to concentration, persistence and pace. (*Id.* at 74, 91.) The ALJ gave this opinion little weight because it was inconsistent with Plaintiff's treating physician's findings, and also inconsistent with Plaintiff's own testimony that he did not think he had difficulty concentrating and his belief that his medications helped his symptoms. (*Id.* at 20.)

The evidence above demonstrates that the lack of mental restrictions in the RFC is supported by substantial evidence. Plaintiff's arguments to the contrary are unpersuasive. He argues that the ALJ erred in weighing the opinions of Dr. Brannon and Dr. Becker and engaged in impermissible "cherry-picking" of the evidence. (Docket Entry 11 at 4-11.) The

7

undersigned disagrees. Regardless of the source, every medical opinion received must be evaluated. 20 C.F.R. §§ 404.1527(c); 416.927(c). State agency medical consultants are highly qualified physicians who are also experts in Social Security disability evaluation. 20 C.F.R. §§ 404.1513a(b)(1); 416.913a(b)(1). Here, the ALJ adequately weighed and considered the opinions of Dr. Brannon and Dr. Becker.

The ALJ explained that Dr. Brannon's opinion was inconsistent with the record as a whole as Plaintiff has had no treatment or care for adjustment disorder. (Tr. 21.) Rather, as the ALJ noted, Plaintiff's treating physician, Dr. Carr, routinely conducted thorough mental status examinations, which were all normal. (*See id.* at 21, 309, 312-13, 320, 346, 350, 354, 358, 362, 366.) Likewise, Dr. Becker's opinion was discounted for being inconsistent with Dr. Carr, and also because it appeared to rely heavily upon Dr. Brannon's opinion. (*Id.* at 20.) *Cf. Smith v. Schweiker,* 795 F.2d 343, 346 (4th Cir. 1986) (testimony of non-examining physician can be relied upon when *consistent* with the record). Considering the treatment notes of Dr. Carr, the weight given to Dr. Skoll, and Plaintiff's own testimony, the ALJ did not engage in impermissible "cherry-picking," but rather clearly articulated his reasoning for discounting the consultants' opinions. Because such reasoning is supported by substantial evidence, Plaintiff's argument fails. *Eplee v. Saul*, No. 1:19CV113-MOC, 2019 WL 5550079, at *5 (W.D.N.C. Oct. 25, 2019) (unpublished) ("The ALJ was entitled to [opinions of medical consultants], as the ALJ is solely responsible for assessing a claimant's RFC.").

## 2. Plaintiff's Physical RFC is supported by substantial evidence.

Plaintiff next argues that the ALJ erred in his assessment of Plaintiff's physical RFC, more specifically, that he improperly weighed Dr. Carr's opinion and failed to adequately develop the record as to Plaintiff's lumbar impairment. (Docket Entry 11 at 11-15.) This argument also fails.

Plaintiff argues that the ALJ improperly weighed the opinion of Dr. Carr. (*Id.* at 11-13.) The "treating physician rule" generally provides more weight to the opinion of a treating source, because it may "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence." 20 C.F.R. § 404.1527(c)(2); *see also* 20 C.F.R. § 416.927(c)(2). An ALJ refusing to accord controlling weight to the medical opinion of a treating physician must consider various "factors" to determine how much weight to give it. *Id.* § 404.1527(c)(2)-(6); *see also* 20 C.F.R. § 416.927(c)(2)-(6). These factors include: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *Id.* § 404.1527(c)(2)-(6); *see also* 20 C.F.R. § 416.927(c)(2)-(6). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

9

Opinions by physicians regarding the ultimate issue of whether a claimant is disabled within the meaning of the Act never receive controlling weight because the decision on that issue remains for the Commissioner alone. 20 C.F.R. §§ 404.1527(d), 416.927(d). In instances where an ALJ decides not to give controlling weight to a treating physician, he must adequate explain his reasoning. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When the explanation given is insufficient, it "preclude[s] [the Court's] ability to undertake the 'meaningful review' with which we are tasked on appeal." *Lewis v. Berryhill*, 858 F.3d 858, 870 (4th Cir. 2017) (citing *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013)).

Here, in the "Instructions" section of several treatment notes, Dr. Carr advised Plaintiff to "avoid heavy lifting" and avoid "activity that increases back pain." (*See* Tr. 313, 320, 346-47, 350, 354, 358-59, 362, 366.) The ALJ gave the opinion little weight as it was vague and "not stated in vocationally significant terms." (*Id.* at 21.) He also noted that the opinion was inconsistent with Dr. Carr's own observations which reflected that Plaintiff consistently had "normal physical examinations with the only positive finding of reduced range of motion on lumbar flexion." (*Id.*)

The ALJ articulated and reasonably declined to afford Dr. Carr's opinion controlling weight for the reasons set forth above. The undetermined amount of "heavy lifting" is vague and is not translatable to vocational terms. *Stout v. Comm'r of Soc. Sec.*, No. 2:18-CV-485, 2019 WL 6606085, at *6 (S.D. Ohio Dec. 5, 2019) (unpublished) ("The problem with [treating physician's] opinion is that he did not opine as to specific exertional limitations that the ALJ could translate into vocational terms."); *Gillis v. Colvin*, No. 1:14CV426, 2015 WL 4644777, at

10

\*6 (M.D.N.C. Aug. 4, 2015) (unpublished) ("[T]he ALJ accurately noted that each report is vague, conclusory, and not expressed in vocationally relevant terms—that is, neither report provides functional limitations arising from Plaintiff's . . . impairments."). Furthermore, Dr. Carr consistently noted that Plaintiff's back pain was "controlled with pain meds" and their use was "stable and appropriate." (Tr. 313, 320, 347, 350, 354, 362, 366.) Moreover, at every doctor's visit where the "instructions" restricted Plaintiff, Dr. Carr simply refilled Plaintiff's pain medication, without the need for any further treatment. (*Id.*) Indeed, "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (citation omitted). As the ALJ noted, the record lacks objective evidence to support a more restrictive RFC, based in part on "the lack of emergency intervention for any exacerbations of pain or worsening conditions." (Tr. 21.) Instead, Plaintiff's medical records reveal that he responded well to conservative treatment for pain, supporting the ALJ's decision to afford little weight to Dr. Carr's unsupported opinion.

Plaintiff also argues that the ALJ failed to develop the record regarding the x-ray of Plaintiff's lumbar spine. (Docket Entry 11 at 13-15.) The "ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record and cannot rely only on evidence submitted by the claimant when that evidence is inadequate." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The regulations require only that the medical evidence be "complete" enough to make a determination regarding the nature and severity of the claimed disability, the duration of the disability and the claimant's residual functional capacity. *See Kersey v. Astrue*, 614 F. Supp. 2d 679, 694 (W.D. Va. 2009).

"An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). In order to develop the record, an ALJ may request additional evidence, including physical examinations or tests. 20 C.F.R. §§ 404.1517, 416.917.

Here, the record was adequately developed to allow the ALJ to render a disability determination. Thus, he was not required to seek additional information to resolve any inconsistencies in the record. *McGraw v. Berryhill*, No. 3:18-CV-01042, 2019 WL 2295766, at *16 (S.D.W. Va. May 6, 2019) (unpublished) (finding that "the record was sufficient for the ALJ to make an informed decision and that there were not inadequacies or evidentiary gaps in the record for which the ALJ was obligated to develop the evidence"), *report and recommendation adopted*, No. CV 3:18-1042, 2019 WL 2305945 (S.D.W. Va. May 29, 2019) (unpublished). Although brief, the record as whole, including treatment notes before and after the date of the x-ray procedures, demonstrate that the ALJ's RFC determination is supported by substantial evidence. Plaintiff's argument thus fails.

### 3. **Remand is not proper under the Appointments Clause.**

Plaintiff next argues in length that his claim should be remanded for a new hearing before a different constitutionally appointed judge because the presiding ALJ's appointment did not comply with the Appointments Clause at the time he rendered his decision. (Docket Entry 11 at 15-19.) Plaintiff relies upon the holding in *Lucia v. Securities and Exchange Commission*, ⎯⎯ U.S. ⎯⎯, 138 S.Ct. 2044, 201 L.Ed.2d 464 (2018). Plaintiff's contention is without merit.

12

In *Lucia*, the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. *Id.* at 2055. In holding such, the Court acknowledged that the challenge was timely because it was made before the Commission, and Lucia "continued pressing that claim in the Court of Appeals and [the Supreme] Court." *Id.* While the issue of whether ALJs in the social security context are subject to the Appointments Clause has not been addressed by the Fourth Circuit Court of Appeals, several district courts within the circuit have held under *Lucia* that only "one who makes a timely [Appointment Clause] challenge" is entitled to relief. *Garrison v. Berryhill*, No. 1:17-CV-00302-FDW, 2018 WL 4924554, at *2 (W.D.N.C. Oct. 10, 2018) (citing *Lucia*, 138 S. Ct. at 2055) (internal citation omitted); *see also Whiteside v. Berryhill*, No. 1:18-CV-00176-FDW, 2019 WL 1639936, at *3-4 (W.D.N.C. Apr. 16, 2019) (unpublished) ("To the extent *Lucia* may apply to Social Security ALJs or Administrative Appeals Judges, Plaintiff has forfeited the issue by failing to raise it during her administrative proceedings."); *Britt v. Berryhill*, No. 1:18-CV-00030-FDW, 2018 WL 6268211, at *2 (W.D.N.C. Nov. 30, 2018) (same).

Here, Plaintiff did not raise this issue at any point during his proceedings with the Social Security Administration—not to the presiding ALJ, or to the Appeals Counsel. Thus, to the extent *Lucia* applies to Social Security ALJs, Plaintiff has forfeited his Appointment Clause issue by failing to raise it during his administrative proceedings. *See Taylor v. Saul*, No. 3:18-CV-00553-KDB, 2019 WL 6972845, at *7 (W.D.N.C. Dec. 18, 2019) (unpublished) ("[C]ommon sense notions of both fairness and efficiency strongly counsel against allowing a Plaintiff to raise a constitutional challenge to the appointment of an ALJ for the first time on

13

appeal to the District Court."); *Love v. Saul*, No. 1:18CV448, 2019 WL 5065064, at *18, n.18 (M.D.N.C. Oct. 9, 2019) (unpublished) ("[O]ther district courts in the Fourth Circuit overwhelmingly have rejected as forfeited challenges to the SSA's ALJs under the Appointments Clause when the plaintiff did not raise the issue while his or her claim remained pending before the SSA.") (collecting cases); *Jackson v. Berryhill*, No. 1:18-CV-00003-RJC, 2019 WL 1332377, at *3 (W.D.N.C. Mar. 25, 2019) (unpublished) ("Because Plaintiff failed to timely raise her Appointments Clause claim, it has been forfeited, and no remand is necessary on that basis.") (collecting cases).

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct and supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment Reversing Decision of the Commissioner of Social Security (Docket Entry 10) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be **GRANTED**, and the final decision of the Commissioner be upheld.

                                              _____
                                                              Joe L. Webster
                                                      United States Magistrate Judge

January 14, 2020
Durham, North Carolina

14

Case 1:19-cv-00146-WO-JLW   Document 15   Filed 01/14/20   Page 14 of 14